IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | |
|---|---|
| KELLY J. ENGELHARDT,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner, Social Security<br>Administration,<br><br>Defendant. | CV-12-33-GF-SEH-RKS<br><br>**FINDINGS &<br>RECOMMENDATIONS** |

## I. SYNOPSIS

Mr. Kelly Engelhardt (Mr. Engelhardt) seeks judicial review of the decision of Defendant, Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Mr. Engelhardt was badly injured in a fall, but substantial evidence supports the Administrative Law Judge's determination that he recovered enough to perform sedentary work within a year. Summary judgment should be granted in favor of the Commissioner.

## II. JURISDICTION

Jurisdiction vests under 42 U.S.C. § 405(g). The case was referred to the undersigned for the submission of proposed findings and recommendations by United States District Judge Sam E. Haddon on July 30, 2012. C.D. 11. Now ripe for disposition are Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment. C.D. 15 & 18.

## III. STATUS

Mr. Engelhardt filed for DIB and SSI on August 20, 2009, alleging a disability onset date of August 7, 2007. Tr. at 181-194. His claims were denied initially on February 28, 2008, Id. at 107-109, and again after a request for reconsideration on July 14, 2008. Id. at 113-116. Mr. Engelhardt timely requested a hearing on September 16, 2008. Id. at 117. A hearing was scheduled for September 14, 2010, but was postponed so the Commissioner could review records for November, 2009 through September, 2010. Tr. 98-102. A hearing was held October 13, 2010. Id. at 26-102.

The Administrative Law Judge ("ALJ") determined that Mr. Engelhardt was not disabled in a decision issued December 18, 2010. Id. at 13-25. The Appeals Council denied review on March 28, 2012. Id. at 1-5. Mr. Engelhardt filed a complaint challenging the Commissioner's decision, in accordance with 42 U.S.C.

§ 405(g), on May 9, 2012, C.D. 5.

## IV. STANDARD OF REVIEW

The Court has discretion to affirm, modify, or reverse the Commissioner's decision with or without a rehearing. 42 U.S.C. § 405(g). The Commissioner's decision may be set aside only where the decision is not supported by substantial evidence or where the decision is based on legal error. Maounis v. Heckler, 738 F.2d 1032, 1034 (9th Cir. 1984) (citing Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence has also been described as "more than a mere scintilla" but "less than a preponderance." Desrosiers v. Sec. of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). The District Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. Green v. Heckler, 803 F.2d 528, 530 (9th Cir. 1986) (citing Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985)). While the Court may not substitute its findings for those of the Commissioner, Palmer v. Celebrezza, 334 F.2d 306, 308 (3rd Cir. 1964), it may reject the findings not supported by the record.

## V. ANALYSIS

**Disability criteria**

A claimant is disabled for purposes of the Social Security Act if the claimant proves by a preponderance of the evidence that: (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment or impairments are of such severity that, considering the claimant's age, education and work experience, the claimant is not only unable to perform previous work, but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." Schneider v. Commr. of Soc. Sec. Admin., 223 F.3d 968, 974 (9th Cir. 2000).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. Corrao v. Shalala, 20 F.3d 943, 946 (9th Cir. 1994) (citing 42 U.S.C. § 1382C(a)(3)). If the Commissioner finds that a claimant is disabled or not disabled at any step in this process, the review process is terminated. Id. At step one, a claimant must show that he is not currently engaged in substantial gainful activity. Id. At step two the claimant must demonstrate that he has a severe impairment. Id. At step three the ALJ must determine whether a claimant's impairment meets or equals the criteria of the Listing of Impairments. Step four provides that if the claimant does not have a

listed impairment, then the claimant must establish a prima facie case of disability by showing an inability to engage in past work because of the medical impairments. Id. If that case is made, at step five the burden shifts to the Commissioner to prove that the claimant can engage in other types of substantial gainful work existing in the national economy given the claimant's age, education, work experience, and residual functional capacity ("RFC"). Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

**ALJ's determination**

At step one, the ALJ determined that Mr. Engelhardt has not engaged in any substantial gainful activity since August 7, 2007. Tr. 18. At step two, the ALJ determined Mr. Engelhardt has "severe" impairments causing significant limitations in his ability to perform basic work activities because of injuries sustained in a 40-foot fall, including bilateral ankle fractures, internal fixation on the right and below-the-knee amputation on the left, tongue laceration, a history of respiratory failure, blood pressure, anemia, pelvic fracture, L4 compression fracture and substance abuse; major depressive disorder; posttraumatic stress disorder. Tr. 18.

At step three, the ALJ found that Mr. Engelhardt's injuries did not satisfy the criteria under the Listing of Impairments. The ALJ explained that Mr. Engelhardt

did not satisfy the "amputation" listing (1.05) because there was no evidence of significant stump complications.  The ALJ explained that Mr. Engelhardt did not satisfy the "major dysfunction of a joint" listing (1.02) because he is able to ambulate effectively.  Tr. 19.  The ALJ explained that Mr. Engelhardt's mental impairments did not meet the criteria under the relevant listings (12.04, 12.06, 12.09) because Mr. Englehardt has only mild or moderate (but not marked) limitations in daily living; social functioning; and concentration, persistence and pace.  The ALJ also found that Mr. Engelhardt has not had repeated episodes of decompensation.  Tr. 19.

At Step Four, the ALJ found that Mr. Engelhardt is unable to perform his past relevant work as a construction manager and drywall applicator.  Tr. 23.  At Step Five, the ALJ found Mr. Engelhardt has the residual functional capacity to perform sedentary work, and that there are a significant number of jobs that Mr. Engelhardt can perform.  Tr. 23-24. The ALJ determined that Mr. Engelhardt is therefore not disabled within the meaning of the Social Security Act.  Tr. 24.

**Plaintiff's contentions**

Mr. Engelhardt contends the ALJ erred at Steps 3 and 5.  Mr. Engelhardt's arguments (slightly restated) are that the ALJ:

1. Improperly determined that Mr. Engelhardt did not satisfy the criteria

> in the Listing of Impairments;

> 2. Improperly found Mr. Engelhardt's testimony was not credible, in part by incorrectly determining there was a gap in Mr. Engelhardt's treatment;

> 3. Improperly disregarded the opinions of Mr. Engelhardt's physicians;

> 4. Relied on vocational expert testimony that did not consider all of Mr. Engelhardt's limitations.

CD 17, p. 17.

**I. Listing of Impairments**

Mr. Engelhardt argues the ALJ erred in finding there was not evidence of significant stump complications, and in finding that Mr. Engelhardt is able to ambulate effectively. CD 17, pp. 30-31. The relevant listing for amputation, 1.05(B), provides that an amputation is severe enough to prevent a person from performing gainful activity if:

> One or both lower extremities at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively, as defined in 1.00(B)(2)(b), which have lasted or are expected to last for at least 12 months.

The other relevant listing, describing major dysfunction of a joint, is 1.02(A). It provides that an individual is disabled if the individual has gross anatomical deformity and chronic joint pain with:

> Involvement of one major peripheral weight-bearing joint (i.e. hip, knee, or

ankle), resulting in an inability to ambulate effectively, as defined in 1.00(B)(2)(b).

Finally, ambulation is addressed by 1.00(B)(2)(b), which explains:

> Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

Mr. Engelhardt argues that he qualifies as disabled under the "amputation" listing because he has stump complications that leave him unable to use a prosthetic device to ambulate effectively. Similarly, Mr. Engelhardt argues that he qualifies under the "joint dysfunction" criteria because he is unable to ambulate effectively. CD 17, p. 31.

Mr. Engelhardt argues that he is unable to ambulate effectively because he has limited use of his prosthesis. He cannot use it for more than three and half hours at time without risking severe skin irritations, and must rest and allow the prosthesis to dry for about two hours between uses. The prosthesis was uncomfortable to use, and Mr. Engelhardt was still using a cane for balance. CD 17, p. 31.

The ALJ relied on notes from Mr. Engelhardt's physical therapist, Daimon Parrotte, to conclude that Mr. Engelhardt did not have significant stump complications and was able to ambulate effectively. Tr. 19. The physical therapist

reported in April 2008 that Mr. Engelhardt was "still having some problems with his stump" but had no skin breakdown. Tr. 467. The physical therapist reported that the was no redness around the stump and the skin had healed nicely, but the soft tissues were atrophying. Tr. 467. The physical therapist reported that Mr. Engelhard was getting around with a walking cane that he used mainly for balance, but could not walk unless he was in shoes. Tr. 467.

Mr. Engelhardt argues in his reply brief that these physical therapy notes indicate that he was, in fact, having significant stump complications and could not ambulate effectively. CD. 21, p. 4. While the physical therapy notes are susceptible to more than one interpretation, they provide substantial evidence for the ALJ's finding that Mr. Engelhardt was able to ambulate effectively and did not have significant stump complications within one year of his accident. The ALJ did not err in finding that Mr. Engelhardt's impairments did not meet the Listing of Impairments criteria.

**II. Mr. Engelhardt's testimony**

The ALJ found that Mr. Engelhardt's testimony regarding the extent of his symptoms was not credible. Tr. 21. The ALJ based this finding, in part, on a gap in Mr. Engelhardt's treatment records from November 2009 through September 2010. Mr. Engelhardt argues this gap in the record existed only because the ALJ failed to

subpoena records for that period. CD 17, p. 29. However, it does not appear that Mr. Engelhardt provided additional records to the Appeals Council. Tr. 1-3. Nor does he explain to this court what treatment he actually received during the apparent gap. See CD 17. His only reference to medical care in that time period is a health assessment in February 2010, which confirmed previous diagnoses. CD 16, p.11.

The ALJ also discounted Mr. Engelhardt's testimony because the ALJ considered it inconsistent with his activities and medical evidence. Tr. 21-23. The ALJ stated that medical records show Mr. Engelhardt has healed well from his 2007 accident, and the most recent medical reports made little mention of physical symptoms. Tr. 21-22. Finally, the ALJ noted that the residual functional capacity was largely consistent with Mr. Engelhardt's testimony. Tr. 22.

The ALJ found that Mr. Engelhardt's mental limitations were mild because Mr. Engelhardt successfully lived in a transition center in 2009 and was attending college. Tr. 22. Mr. Engelhardt argues that his college attendance does not evidence greater capabilities than he testified to, because he is unable to sit through a two-hour class and must return home between classes to remove his prosthesis. Tr. 22. Mr. Engelhardt misconstrues the ALJ's findings: The ALJ did not find that college attendance was evidence of physical abilities. Tr. 22. Instead the ALJ found that Mr. Engelhardt's college enrollment suggested more limited mental

symptoms than Mr. Engelhardt claimed. Tr. 22.

The ALJ must provide specific reasons, which are supported by substantial evidence in the record, to discredit a claimant's testimony regarding symptom severity. See Bunnel v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991). The ALJ discredited Mr. Engelhardt's testimony regarding physical symptoms based on contradictory findings in the medical record, particularly the notes of Dr. Gregg Pike, prosthetist Glenn Wilson, and physical therapist Daimon Parrotte. Tr. 21. The ALJ discredited Mr. Engelhardt's testimony regarding the extent of his mental symptoms based on his enrollment and attendance at college. Tr. 22. These reasons are specific, and are supported by substantial evidence.

### III. Medical expert opinions

Mr. Engelhardt contends that the ALJ ignored the opinions of treating physicians, test results, examining physicians mental health providers, the prosthetist/orthotist, and the physical therapist. CD 17, p. 19.

Mr. Engelhardt's contention that the ALJ ignored every medical opinion is clearly false. The ALJ specifically addressed opinion evidence, noting that "none of the claimant's medical provider placed any workplace limitations on the claimant." Tr. 23. The ALJ recognized Kathleen Ryan's opinion that the claimant would not be able to complete a forty-hour work week, but gave that opinion little

weight because Ms. Ryan is not a medical source and appears to have had limited contact with Mr. Engelhardt. The ALJ also recognized Dr. Tim Schofield's opinion that Mr. Engelhardt is capable of seated light work, but gave it only some weight because Mr. Schofield failed to consider the residual physical effects of Mr. Engelhardt's accident. Tr. 23. The ALJ's opinion refers to treating physician Dr. Kedric Cecil's notes about Mr. Engelhardt's mental impairments, or the lack thereof. The opinion also refers to counselor Karen Bauman's notes that Mr. Engelhardt attempts to present himself in a positive light. Tr. 22. In short, Mr. Engelhardt's general argument that the ALJ ignored all medical opinions is untrue.

     Mr. Engelhardt's assertion that the ALJ failed to consider objective medical evidence is also incorrect. Mr. Engelhardt sets forth a variety of physical symptoms and diagnoses arising from his accident. CD 17, pp. 21-24. However, most of those are from 2007, in the months following the accident. Id. It is beyond dispute that Mr. Engelhardt was severely injured in the fall. But the issue before the ALJ was Mr. Engelhardt's condition one year after the accident and beyond, since a claimant is not disabled under the Social Security Act if an impairment no longer prevents substantial gainful activity 12 months after onset of the impairment. 20 C.F.R. § 404.1505; <u>Barnhart v. Walton</u>, 535 U.S. 212, 219-22 (2002).

     The ALJ found that "the evidence shows that he generally healed very well

following his August of 2007 accident." Tr. 21. Substantial evidence supports that conclusion. The ALJ specifically observed that Mr. Engelhardt's right (non-amputated) leg was 98 percent healed by November 2007, he was using a wheelchair by December 2007 and progressed to walking with a prosthetic and cane by April 2008, and physical therapy notes showed continued improvement thereafter. Tr. 21-22.

More specifically, Mr. Engelhardt argues the ALJ disregarded the evidence that Mr. Engelhardt has a bone protruding from the bottom of his right foot and failed to include that protrusion as an impairment. Tr. 17, p. 19, 25. In fact, the ALJ described Mr. Engelhardt's impairment generally as "status post 40 foot fall associated with multiple trauma." Tr. 18. The ALJ's opinion indicates he did account for residual injuries to Mr. Engelhardt's right leg. See Tr. 22 ("based on his complaints of pain and the condition of his lower extremities, the undersigned concludes that he must avoid concentrated exposure to extreme temperatures . . . vibrations, and walking across uneven or rough surfaces."; Tr. 23 ("Dr. Schofield did not properly consider the residual effects of the claimant's August of 2007 accident.").

The ALJ did not reject the opinions of any medical source, except Dr. Schofield's opinion that Mr. Engelhardt is capable of seated light work – which the

ALJ rejected in Mr. Engelhardt's favor.  The ALJ considered objective medical evidence, including Mr. Engelhardt's residual impairments.  Substantial evidence supports the residual functioning capacity established by the ALJ.

**IV. Vocational expert testimony**

Mr. Engelhardt argues the ALJ relied on testimony from the vocational expert that did not consider all of Mr. Engelhardt's limitations.  CD 17, p. 34.  Mr. Engelhardt argues the ALJ should have relied on a hypothetical that assumed the worker would require extended breaks each work day, and/or would miss more than two workdays in a typical month.  Id., citing Tr. 92.  As discussed above, the ALJ considered the medical opinions and evidence, along with Mr. Engelhardt's testimony.  The ALJ's findings regarding Mr. Engelhardt's limitations are supported by substantial evidence.  As required, the ALJ included those limitations supported by substantial evidence.  Robbins v. Social Security Administration, 466 F.3d 880, 886 (9th Cir. 2006).

**VI. CONCLUSION**

The ALJ was presented with conflicting evidence regarding Mr. Engelhardt's disability status.  It was the ALJ's job to consider all the evidence, resolve the conflicts, and make a finding.  Substantial evidence supports the ALJ's finding that Mr. Engelhardt has the residual functional capacity to perform sedentary work in

positions such as food and beverage order clerk or charge account clerk.  Mr. Engelhardt obviously suffered extensive injuries in his fall, but the record supports the conclusion that he recovered sufficiently to perform sedentary work within a year of the fall.

For the foregoing reasons, **IT IS HEREBY RECOMMENDED:**

1.  Plaintiff's Motion for Summary Judgment, CD 15, be denied.

2.  The Commissioner's Motion for Summary Judgment, CD 18, be granted.

3.  This matter be dismissed pursuant to Federal Rule of Civil Procedure 58.

NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Findings and Recommendations within fourteen (14) business days of the date entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district

judge.

DATED this 5th day of February, 2013.

/s/ Keith Strong
Keith Strong
United States Magistrate Judge